UNITED STATES of America,
Plaintiff,

v.

HAYMARKET VETERANS UNIFORM COMPANY, Defendant.

Civ. A. No. 61–76–F.

United States District Court
D. Massachusetts.

April 13, 1964.

W. Arthur Garrity, Jr., U. S. Atty., Frances C. Kissell, Paul A. M. Hunt, Asst. U. S. Attys., for plaintiff.

Lawrence R. Cohen, Boston, Mass., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action by the United States to recover from a contractor savings allegedly made as a result of changes made in the contract provisions as to the manner of packing and shipping raincoats manufactured under the contract.

The contract in question, No. DA–30–280–QM–15632, was executed on May 3, 1951 by W. F. Floyd, Captain QMC, as contracting officer on behalf of the United States and by James Cohen, Treasurer, on behalf of the corporation. It called for the manufacture and delivery by defendants of 60,000 raincoats for a total contract price of $429,000. The raincoats were to be packed and shipped in boxes of twenty-four raincoats. The contract contained the following pertinent provisions:

"2. CHANGES.

"The contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in any one or more of the following: (i) drawings, designs, or specifications, where the supplies to be furnished are to be specially manufactured for the Government in accordance therewith; (ii) method of shipment or packing; and (iii) place of delivery. If any such change causes an increase or decrease in the cost of, or the time required for, performance of this contract, an equitable adjustment shall be made in the contract price or delivery schedule, or both, and the contract shall be modified in writing accordingly. Any claim by the Contractor for adjustment under this clause must be asserted within 30 days from the date of receipt by the Contractor of the notification of change: Provided, however, That the Contracting Officer, if he decides that the facts justify such action may receive and act upon any such claim asserted at any time prior to final payment under this contract. Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled 'Disputes'. However, nothing in this clause shall excuse the contractor from proceeding with the contract as changed.

"12. DISPUTES.

"Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing, and mail or otherwise furnish a copy thereof to the Contractor. Within 30 days from the date of receipt of such copy, the Contractor may appeal by mailing or otherwise furnishing to the Contracting Officer a written appeal addressed to the Secretary, and the decision of the Secretary or his duly authorized representative for the hearing of such appeals shall be final and conclusive: Provided, That if no such appeal is taken, the decision of the Contracting Officer shall be final and con-

clusive. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision."

The contract was actually performed by a subcontractor of defendant which manufactured and shipped the raincoats, and payment was made to defendant by the government in accordance with the original contract terms.

During the course of the performance of the contract requests were made on two occasions for permission to ship the raincoats in boxes containing a larger number of units. In accordance with the requests the contracting officer on August 16, 1951 by letter gave permission to ship thirty-two raincoats per box in lieu of the twenty-four per box originally specified. Similarly, on August 30, 1951 he granted permission to ship forty raincoats per box. Those letters specified that the requested permission was granted, "providing there is no additional cost to the government." Nothing was said or done at that time about any saving to the contractor which might result from the change in the method of packing.

On May 29, 1957 Maurice E. Lobby, CWO, a duly appointed contracting officer at the Philadelphia Quartermaster Depot wrote to defendant as successor contracting officer, asking for complete details as to any savings resulting from the packing and shipping of the raincoats in increased numbers per box. Defendant furnished no information in response to this request. On August 2, 1957 Lobby by letter informed defendant he had computed the savings to defendant resulting from the contract change at $1189.52 and requested payment of this amount. Counsel for defendant in a letter in response to this objected to this claim and on behalf of the corporation

refused to pay. Lobby thereupon on September 18, 1957 sent to the defendant formal Findings of Fact and Decision under sections 2 and 12 of the contract, finding that defendant was liable to the government for the amount of $1189.52. The letter also set forth in detail the procedure to be followed if defendant desired to appeal from this decision. Defendant took no steps to appeal the decision.

It is the position of government that under section 12 of the contract since no appeal was taken the decision of the contracting officer is final and conclusive, and that the government is entitled to judgment for the amount found by him to be due.

Defendant makes several contentions in opposition to this view. First of all, it argues that Article 2 does not apply in the present situation because there was no change in the contract but only a permission to deviate, and further that if there was a change it was not made by written order as required by the contract. These contentions are without substantial merit. It seems clear that there was a change in the contract requirements as to the method of packing and shipping the raincoats. The original requirement was for shipment of twenty-four coats to a box. Even assuming that the action of the contracting officer was permissive and that as defendant argues it could still have continued to ship twenty-four coats to a box, nevertheless there was a change in the original specifications giving the defendant alternative methods of shipment and binding the government to accept shipments in boxes of thirty-two or forty coats if defendant chose to ship them in that manner. This was clearly a change in the shipping requirement of the original contract. The contract requires that the change be made by written order but no particular form of order was specified. In the absence of such a contract requirement and in the absence of any evidence that any particular form was prescribed by any law or regulation the letters written by the contracting officer appear to be

a sufficient compliance with the requirement of a written order.

█ Defendant also argues that because the contracting officer failed to make an adjustment of the contract price at the time he made the change in shipping requirements, or at least reserve the right to do so, the government's right to recover any savings resulting from the change was waived. Again nothing in the contract requires that the price adjustment be made simultaneously with the contract change. While Article 2 specifically limits the time within which a contractor may claim a price adjustment, it imposes no such limitation on the government. There is no basis for implying that the contracting officer in any way violated his duty by making a contract change without simultaneously determining the appropriate price adjustment or that he could not properly make such an adjustment at a later date.

█ Defendant contends that the determination made by Lobby in 1957 is not binding because he was not the person authorized to make it. The person authorized to do so under the terms of the contract is the contracting officer. Article 1(b) of the General Provisions of the contract contains the following definition:

> "(b) The term 'Contracting Officer' means the person executing this contract on behalf of the Government, and any other officer or civilian employee who is a properly designated Contracting Officer * * *"

From the evidence it appears that Lobby was duly assigned to duty as a Contracting Officer, Contract Review Agency, Philadelphia Quartermaster Agency, from July 20, 1956 to November 1, 1957 and was therefore at the time of his action a person authorized to make the determination as to savings which he did make.

█ Defendant further argues that the determination of the contracting officer cannot be held to be conclusive because it is not supported by substantial evidence. The only basis for this argument appears to be that the findings of the successor contracting officer do not set forth in detail the evidence on which he based his finding. However, it is clear from the correspondence in regard to the change in shipping requirements that the reason for the change was that there was room in the packing boxes used for more than twenty-four raincoats, and that by packing more coats in a box a smaller number of boxes would be required. This is evidence to support a finding that some saving was made. Furthermore, it appears that the contracting officer had before him estimates as to the actual savings in materials and labor resulting from a reduction in the number of boxes required, and this number could be calculated on the basis of the number of raincoats shipped after the contract change became effective. Defendant, of course, did not avail itself of the opportunity to present any evidence it may have had on the question of savings made nor did it appeal from the determination of the contracting officer.

█ Defendant further contends that the price adjustment made by the contracting officer was not an equitable one, as required by Article 2 of the contract. It argues, for example, that it is unfair to require it, several years after the completion of the contract, to repay savings which it says it cannot now collect from its subcontractor. However, the determination of what was an equitable adjustment was one to be made by the contracting officer. Defendant made no effort to present to the contracting officer, or to the Board of Contract Appeals, evidence of circumstances which would make it inequitable to require repayment by defendant of any savings made as a result of the contract change. It cannot now complain that such factors may not have been taken into account by the contracting officer in his determination. Furthermore, the United States is not subject to the defense of laches in enforcing its rights. United

States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283.

The United States is entitled to recover from defendant the savings resulting from the contract changes, as found by the successor contracting officer in the amount of $1189.52 with interest from January 8, 1959, the date on which payment was demanded by the General Accounting Office.